# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | |
|---|---|
| KEITH PIEARSON | CIVIL ACTION NO. 06-1316 |
| VS. | SECTION P |
| CORRECTIONS CENTER | CHIEF JUDGE HAIK |
| LAFAYETTE PARISH, ET AL. | MAGISTRATE JUDGE METHVIN |

### REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on August 2, 2006 by *pro se* plaintiff Keith Piearson. Plaintiff is a detainee at the Lafayette Parish Corrections Center (LPCC), Lafayette, Louisiana, and he complains that he was denied appropriate medical care in June, 2006; he also complains about the manner in which his administrative remedies procedure grievance was handled. He named the Lafayette Parish Correctional Center and Nurse Marice Kemynra as defendants. He prays to "...be heard..." and requests that "action" be taken against the LPCC administration.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE AS FRIVOLOUS** in accordance with the provisions of 28 U.S.C. §1915.

### *Background*

Plaintiff is apparently a pre-trial detainee in the custody of the Sheriff of Lafayette Parish. On June 19, 2006 while undergoing a dental examination at LPCC, the examination chair began "popping and smoking." Deputy Broussard, a jailer who accompanied plaintiff to the

examination, told plaintiff to get out of the chair. Plaintiff twisted his back removing himself from the chair. (Plaintiff had a pre-existing "serious gun-shot wound" in his back.) Broussard asked plaintiff if he was alright. The medical department was evacuated because of smoke. When the smoke cleared, plaintiff was returned to the medical department. Deputy Broussard brought plaintiff to Nurse Marice Kemynra for examination. She told plaintiff to pull up his shirt and he did so. Nurse Kemynra stood "across the room." She advised that there was nothing wrong with the plaintiff and told Broussard to return plaintiff to his cell and "...get him out of her face..." Plaintiff complains that Kemynra "...showed no concern..." and handled his medical problem in an unprofessional manner.

As a result, plaintiff submitted an Administrative Remedies Procedure (ARP) Grievance on June 19, 2006. The grievance stated,

> "I would like a 1983 form on the poor way the Medical Staff handle a problem on 6-19-06. I was seeing the dentist and the chair I was sitting in while laying back in it start to pop and smoke was coming from it. I have a iron plate in my shoulder. By me jump up fast I pull something in my back. Dep. Broussard was stand next to me tell me get out of the chair. Nurse Marice told me to pull up my shirt then told me to get out of her office and face. No medical help at all. I need a 1983 form no one would help me my back is in pain." [doc, 1-1, p. 6]

This ARP was eventually routed to Nurse Kemynra and on June 24, 2006 she replied, "Mr. Pierson, you saw the M.D. on 6-23-06 and did not address this issue at that time. You will see Dr. LeBlanc on 6-26-2006."[1]

On June 25, 2006, plaintiff submitted a second ARP which complained,

---

[1] On February 27, 2006 plaintiff filed his first civil rights complaint concerning conditions of confinement at LPCC. See *Piearson v. Correctional Center Lafayette Parish*, Docket Number 6:06-cv-00323. Plaintiff submitted the copies of the grievances related to the instant case and requested that these documents be filed in the former case. This completed ARP is filed in 06-00323 at doc. 5, p. 2.

"To whom it may concern. Grievance on 6-19-06 about how medical staff handle my problem 6-19-06 on M. Kemynra, L.P.N. She received my Grievance and response and delivered. No rank of Administrative person beside the person the grievance was wrote on that's not fair to let Nurse Kemynra L.P.N. to read and answer the grievance that was wrote on her. On the back of the grievance they have steps. L.P.C.C. does not respect a inmate rights they believe they are above the law I would like a 1983 form." [*Piearson v. LPCC*, 6:06-cv-00323 at doc. 5, p. 4]

On July 6, 2006, an individual named M. Gonzales responded to plaintiff's complaint,

"Mr. Pearson, if you need a 1983 form you can get it from the law library." [id.]

On June 21, 2006 plaintiff submitted a General Request Form to the Security

Investigation Unit which stated,

"On Monday 6-19-06 I was in the dental chair. I have a gunshot wound in my shoulder and back. The chair was up in the air with me laying back. The chair start popping and smoking while I was still in the chair. By me jump out of the chair twist my back. The nurse didn't even give me a ice pack or nothing. I believe it was because I was black. She handle me like I was nothing. I was the only black in there. I was in serious pain, I don't even want Lafayette Medical to touch me. I need a 1983 form. Thank you." [6:06-cv-1316, doc. 1-1, p. 8]

On June 25, 2006 plaintiff submitted a General Request Form addressed to the Warden

and the Security Investigation Staff. Therein he claimed,

"To whom it may concern. I wrote an ARP on Nurse M. Kemynra. It's not fair for her to read and answer the ARP and delivered the ARP to me with a smile. This form call ARP has steps to it. 1st responder Corporal or Sergeant. I would like a 1983 form. LPCC think they are above the law. It's stop here." [*Piearson v. LPCC*, 6:06-cv-00323 at doc. 5, p. 5]

Plaintiff signed his complaint on July 20, 2006; it was received and filed on August 2,

2006. As shown above, plaintiff's only request for relief is, "I should be heard and action taking

against this administrative this is the second time I have been treated this way." [doc. 1-1, p. 5]

*Law and Analysis*

*1. Frivolity Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to

42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of

process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or

seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A;

28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2

F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118

L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be

granted if it appears that no relief could be granted under any set of facts that could be proven

consistent with the allegations of the complaint. Of course, in making this determination, the

court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157

F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint

as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116,

1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given

broad discretion in determining when such complaints are frivolous. *Macias v. Raul A.*

*(Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a

constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has submitted a complaint and exhibits in support of his complaint. He complains about the medical care he received following the June 19 incident and he complains about the way his administrative remedies was handled. Plaintiff has provided all of the information necessary to resolve his claims. He need not be afforded an opportunity for further amendment. His claims are frivolous; his complaint fails to state a claim for which relief may be granted.

## 2. Juridical Person

Plaintiff has named the Lafayette Parish Corrections Center as a defendant in the caption of his original complaint. Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether LPCC is an entity which has the capacity to sue or be sued. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24.

The LPCC is not an entity capable of being sued. LPCC is apparently a parish corrections facility operated by the Sheriff of Lafayette Parish. [Compare La. Atty. Gen. Op. No. 03-0437, 2003 WL 23146623; see also, *Langley v. City of Monroe*, 582 So.2d 367 (La.App.2d Cir.1991)

and La. R.S.15:702 (The parish governing authority is charged with the duty to provide a good

and sufficient jail and to provide for the physical maintenance of parish jails and prisons;

however, the administration of such jails is within the province of the sheriff who has the duty of

operating the jail and insuring that prisoners are properly cared for, fed and clothed.) ]

Nor is the Lafayette Parish Sheriff's Office a juridical person. In Louisiana, Parish

Sheriff's Offices are not legal entities capable of suing or being sued. See, *Cozzo v. Tangipahoa*

*Parish Council-President*, 279 F.3d 273, 283 (5th Cir.2002); *Ruggiero v. Litchfield*, 700 F.Supp.

863, 865 (M.D.La.1998); *Causey v. Parish of Tangipahoa*, 167 F.Supp.2d 898, 909

(E.D.La.2001); *Liberty Mutual Insurance Co. v. Grant Parish Sheriff's Department*, 350 So.2d

236 (La.App. 3d Cir.), *writ refused*, 352 So.2d 235 (La.1977); *Newton v. Tangipahoa Parish*

*Sheriff's Office, et al.*, 2004 WL 963790 (E.D.La. May 5, 2004). Further, the LPCC medical

department is not an independent entity capable of being sued in a § 1983 action. *Oladipupo v.*

*Austin*, 104 F.Supp.2d 626, 641-42 (W.D.La.2000).

Plaintiff's suit against this non-juridical entity is frivolous and dismissal on that basis is

recommended.[2]

*3. Medical Care*

Plaintiff faults Nurse Kemynra for the way she treated him following the June 19

incident.  At all times pertinent to this complaint, plaintiff was a pretrial detainee. The standard

to apply in analyzing a denial of medical care claim asserted by a pretrial detainee depends upon

---

[2] Plaintiff is (or should be) aware of this prohibition. In July 2004 he filed a §1983 complaint in the United States District Court for the Eastern District of Louisiana and named the "Orleans Jail" as a defendant.  That complaint was dismissed as frivolous because, as that court observed, "... a parish jail is 'not an entity, but a building.' See *Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 613 (E.D. La. 1998) (dismissing with prejudice the St. Tammany Parish Jail as an improper defendant)..." See *Keith Pearson v. Orleans Jail, et al.*, No. 2:04-cv-2056 at docs. 6, 7, 8.

whether the claim is directed to a "condition of confinement" or to an "episodic act or omission." *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997), quoting *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir. 1996). Plaintiff complains of an episodic act. Under the "episodic act" standard, "a state official's episodic act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights." Thus, the plaintiff must show that he suffered a <u>sufficiently serious deprivation</u> and <u>deliberate indifference by prison officials</u>. *Hare*, 74 F.3d at 643 and 650.

In *Hare*, the Fifth Circuit explained the constitutional standards applicable to pretrial detainees in local jails. "A 'condition of confinement' case is a 'constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement.'" *Scott*, 114 F.3d at 53, quoting *Hare*, 74 F.3d at 644. In such a case, if the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective, the condition is unconstitutional. *Scott*, 74 F.3d at 53.

This is the same standard applicable to convicted prisoners whose claims are analyzed under the Eighth Amendment. In order to prevail on such claims, convicts must establish that the delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

"Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir.1997). It occurs when a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837-840, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of defendants. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985). In *Smith v. Wade*, 461 U.S. 30, 39 n. 8, 103 S.C. 1625, 1632 n. 8, 75 L.Ed.2d 632 (1983), the Court approved the following definition of wanton – "'Wanton means reckless – without regard to the rights of others ... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.' 30 <u>American and English Encyclopedia of Law</u> 2-4 (2d ed. 905) (footnotes omitted)."

Nothing in plaintiff's complaint suggests that Nurse Kemynra was guilty of deliberate indifference. Nothing suggests that she was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. Even assuming that she was aware of such facts, nothing suggests that she actually drew such an inference. To the contrary, the evidence before the court suggests that plaintiff was provided adequate medical care. According to the exhibits, plaintiff was examined by a physician on June 23, four days after the incident, and did not complain to him of any back pain. The exhibits also establish that plaintiff was scheduled to be seen again by a physician on June 26.

Plaintiff has not established that he sustained any injury following the June 19 incident. He certainly has not established that he was treated with deliberate indifference thereafter. In short, his medical care claim is frivolous.

#### 4. Administrative Remedies

Finally, plaintiff finds fault in the <u>manner</u> in which his ARPs were resolved. Specifically, he faults the administration for allowing Nurse Kemynra to read and respond to the ARP which complained about her failure to provide adequate medical treatment on June 19. This complaint is nonsensical at best. Plaintiff implies that corrections officers and jail employees should not be afforded an opportunity to respond to inmate complaints.

In any event, the evidence submitted by the plaintiff establishes that he was provided prompt responses to each of the grievances he filed. Plaintiff seems to imply that because the defendant's responses to his ARPs were unacceptable to him that the entire grievance process is thus inadequate. He is wrong. There appears to be no factual basis for this claim.

In any event, even had all of plaintiff's grievances been totally ignored, he would still not be able to state a claim for relief. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court narrowed the due process protections afforded to prisoners. Prisoners have no federally-protected right to have grievances investigated and resolved. Such rights, if any, are provided by state law or by the jail's internal regulation and the mere failure of an official to follow state law or regulation, without more, does not violate the constitution and is thus not actionable under Section 1983. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"). See also *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such

procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantial right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Plaintiff's claim concerning the handling of his grievances is frivolous.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

conclusions accepted by the District Court, except upon grounds of plain error. See

*Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on October 18, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)